# United States District Court

## WESTERN DISTRICT OF WASHINGTON

In the Matter of the Search of

(Name address or brief description of person property or premises to be searched)
Western Van and Storage
8521 South 190th Street
Kent, Washington

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

CASE NUMBER **03-315 M**

*ENTERED
LODGED
RECEIVED
JUN 06 2003
CLERK U.S. AT SEATTLE
WESTERN DISTRICT OF DISTRICT COURT
BY WASHINGTON
DEPUTY*

I, THEODORE A MILLER ,being duly sworn depose and say

I am a Special Agent of the Federal Bureau of Investigation and have reason to believe that ( ) on the person of or (X) on the property known as (name description and/or location)

Western Van and Storage, 8521 South 190th Street, in Kent, Washington, specifically to include the items and property stored and maintained under Cause Number 03-2-17350-9SEA for the Superior Court of King County,

in the Western District of Washington, there is now concealed a certain person or property, namely
(describe the person or property to be seized)

*See* Attachment A, which is attached hereto and incorporated herein by reference,

which is (state one or more basis for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)

evidence, fruits, and instrumentalities of Bank Fraud and Making a False Statement in Connection With a Loan Application,

concerning a violation of Title 18 United States Code, Section(s) 1014 and 1344

The facts to support a finding of Probable Cause are as follows

See Affidavit of Special Agent Theodore A Miller, which is attached hereto and incorporated herein by reference

Continued on the attached sheet and made a part hereof    (X) Yes    ( ) No

_____
Signature of Affiant
THEODORE A MILLER

Sworn to before me, and subscribed in my presence

June 6, 2003 _____ at    Seattle, Washington
Date                                            City and State

United States Magistrate Judge Ricardo S Martinez
Name and Title of Judicial Officer

_____
Signature of Judicial Officer

M 03-00315 #00000001

## AFFIDAVIT

STATE OF WASHINGTON        )
                           )
COUNTY OF KING             )

THEODORE A MILLER, being duly sworn, states as follows·

1      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been employed as such for over four years  I have received extensive training involving the investigations of bank fraud, money laundering, and bank embezzlement at the FBI Academy during new agent's training and during various white collar crime training seminars which I have attended   While employed as a Special Agent for the FBI, I have conducted many criminal investigations pertaining to the violations of these federal laws   Before becoming a Special Agent for the FBI, I was employed as a tax auditor and certified public accountant (CPA) for over six years.

### LOCATIONS TO BE SEARCHED

2      I submit this Affidavit in support of an Application for Search Warrant to search the premises at Western Van and Storage located at 8521 South 190th Street, in Kent, Washington, and to seize a laptop computer system, which I believe the serial number to be is B2L930B, including all peripheral devices and related hardware and software, and to seize any and all computer systems that were previously kept in the office of SHELLEY DAY on the business premises of HULABEE ENTERTAINMENT, INC.

### ITEMS TO BE SEARCHED AND SEIZED

3      As described in this Affidavit, I have probable cause to believe there is located at Western Van and Storage a laptop computer system as well as other computer systems, as described in **ATTACHMENT A**, which is attached to this affidavit and incorporated herein by reference.  I have probable cause to believe that said computers contain evidence of the commission of a criminal offense.  The items of evidence that I believe will be found on the computer system are more fully described in **ATTACHMENT A**   I have probable cause to

AFFIDAVIT/MILLER/WESTERN VAN & STORAGE - 1
(USAO #2003R00678)

UNITED STATES ATTORNEY
601 UNION STREET  SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

1  believe that the computers and their contents constitute evidence of the commission of a

2  criminal offense; or contraband, the fruits of crime, or things otherwise criminally possessed,

3  or property designed or intended for use which is or has been used as the means of committing

4  a criminal offense, namely, Bank Fraud and the Making of a False Statement in Connection

5  with a Loan Application.

6  ### SUMMARY OF INVESTIGATIVE FINDINGS

7  4       By way of summary, my investigation has led me to believe that SHELLEY

8  DAY, and possibly others, has/have been involved in the commission of a bank fraud against

9  Asia Europe Americas Bank (AEA Bank), a federally-insured bank in Seattle, Washington   I

10  have reason to believe that, beginning at an exact time unknown, but beginning as early as

11  March 2002, and continuing through the present, within the Western District of Washington,

12  SHELLEY DAY knowingly and willfully devised and executed a scheme and artifice to

13  defraud AEA Bank, a financial institution as defined by Title 18, United States Code, Section

14  20, and to obtain moneys, funds, and credits under the custody and control of the Bank by

15  false and fraudulent pretenses, representations and promises, as further described below

16  5       I have determined that this scheme involved DAY'S application for, and receipt

17  of, two loans (including renewals), totaling approximately $1,490,500 00, from AEA Bank

18  My investigation has led me to believe that DAY willfully overvalued her property and her

19  security and she submitted fraudulent documents, containing forged signatures, to AEA Bank

20  in support of the loans   I have reason to believe that DAY used her laptop computer system,

21  which was located in her office on the business premises of HULABEE ENTERTAINMENT,

22  INC , to create the fraudulent documents and other related correspondence and to send e-mail

23  messages to representatives of the bank and others, in furtherance of her scheme to defraud.  I

24  have reason to believe that the computer system is presently held at Western Van and Storage

25  within the custody of the King County Sheriff's Office under Cause No  03-2-17350-9SEA

26  ### PREVIOUS SEARCH WARRANT

27  6       In support of this <u>Application for Search Warrant</u>, I reallege all statements set

28  forth in my previous <u>Application for Search Warrant</u>, dated May 5, 2003, which is attached

AFFIDAVIT/MILLER/WESTERN VAN & STORAGE - 2
(USAO #2003R00678)

hereto as **ATTACHMENT B**, and incorporated herein by reference.  In my earlier Application for Search Warrant, I sought permission to search the residence of SHELLEY DAY on Mercer Island, Washington, and the business premises of HULABEE ENTERTAINMENT, INC , located in Kirkland, Washington

7      On May 5, 2003, United States Magistrate Judge Monica J  Benton approved my application to search both locations

8      On May 7, 2003, I executed the search warrants at DAY'S residence and at HULABEE ENTERTAINMENT, INC , and I recovered from both locations evidence which appears to be in furtherance of the criminal offenses under investigation

9      On the same day, I interviewed DAY in her home   She made several statements to me at the time.  I will not repeat all such statements in this affidavit, but only those statements which are relevant to this Application for Search Warrant   Essentially, she admitted to me that she had defrauded AEA Bank in connection with her application and receipt of several loans   She stated that she had made several misstatements to bank representatives in furtherance of her loan applications, and that she did so by using fictitious documents upon which the bank relied in extending the loans to her.  She also admitted that many of the documents and correspondence for which I was searching were contained on her laptop computer system that had been kept in her office at HULABEE ENTERTAINMENT, INC   She believes that the serial number of her laptop computer is B2L930B   She indicated that there was more than one computer in her office, including a desk top and another laptop computer system

10     DAY explained that she had kept these computers at the business premises of HULABEE ENTERTAINMENT, INC , but that they had been removed at least one week earlier by a law enforcement officer from the King County Sheriff's Office.

11     Independent of my conversation with DAY, I have learned the following·

12     In February 2003, another Mercer Island resident, by the name of Graham Dorland, had initiated a lawsuit against SHELLEY DAY in connection with a Residential Sale and Purchase Agreement regarding the sale of Dorland's home on Mercer Island to DAY

AFFIDAVIT/MILLER/WESTERN VAN & STORAGE - 3
(USAO #2003R00678)

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

Apparently, DAY had defaulted under the terms of a promissory note  Accordingly, Dorland and his wife, Virginia Dorland, filed a lawsuit in the Superior Court for King County, *Graham Dorland and Virginia Dorland v. Shelly Day and Hulabee Entertainment, Inc.*, Cause No. 03-2-17350-9SEA

13    Since DAY never submitted a formal Answer to the complaint, Dorland successfully obtained a default judgment, on April 2, 2003, in the amount of $190,463 34.

14    Further, on April 10, 2003, Dorland's attorney obtained a Writ of Judgment against DAY, which authorized the King County Sheriff's Office to serve the writ and to seize the personal property of SHELLEY DAY and HULABEE ENTERTAINMENT, INC , for sale at a Sheriff's auction within a few months period of time

15    On or about April 23, 2003, Dorland's attorney was accompanied by Detective Hugo Esparza of the King County Sheriff's Office in order to serve the Writ of Judgment at DAY's home and at HULABEE ENTERTAINMENT, INC.  Pursuant to the writ, the detective seized numerous assets and miscellaneous items.  On that day, several computers were seized from HULABEE ENTERTAINMENT, INC , including DAY's laptop computer, serial number B2L930B, and other computer systems from her office. The detective caused the computer systems to be disconnected so that they could be transported into storage within the custody of the King County Sheriff's Office

16.    After seizing the items, Detective Esparza prepared an inventory of all items taken from HULABEE ENTERTAINMENT, INC   I have seen the written inventory, which includes the laptop computer, serial number B2L930B  There are other computer systems described on the inventory  Detective Esparza also caused the transportation of all seized items to Western Van and Storage at 8521 South 190th Street, in Kent, Washington, to be held for auction on June 3, 2003.  Detective Esparza later advised Assistant United States Attorney Janet Freeman, who is assigned to the prosecution of this matter, that the auction would be continued until June 9, 2003.  Thus, time is of the essence that I seize the computer systems described in this Affidavit, prior to their sale at auction.

AFFIDAVIT/MILLER/WESTERN VAN & STORAGE - 4
(USAO #2003R00678)

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

17     It is my understanding that Western Van and Storage holds such items in custody on behalf of the King County Sheriff's Office.  Deputy Esparza has advised that the items are stored on pallets in the storage unit and are maintained under the cause number for each case As before stated, the items are being held under Cause No  03-2-17350-9SEA for the Superior Court of King County.

18     With this application, I am seeking authorization to seize the laptop computer system, which is believed to have serial number B2L930B, and any and all electronic storage devices, along with all related peripheral devices, software, documentation, data security devices, and passwords, that are necessary to operate the laptop computer system in question I am also seeking authorization to seize any other computer systems that were contained within DAY's office at HULABEE ENTERTAINMENT, INC., as these computers may also contain evidence of criminal violations.  DAY had admitted to me that she used a computer system at her office in furtherance of her misrepresentations to the bank and in furtherance of her scheme to defraud the bank.  In the event that DAY has provided me with an incorrect serial number for her laptop system, I wish to seize all the computer systems from her office at HULABEE so that they may be preserved and searched for evidence of criminal violations, prior to the sale of the computer at a Sheriff's auction, in which case the evidence will or may be lost

19.     I make this request to seize all computers and related devices and software, as previously kept in DAY's office at HULABEE ENTERTAINMENT, INC., for the reasons set forth in my earlier Affidavit for Search Warrant  DAY has admitted to me that she used her computer system at work to create fictitious documents in furtherance of a scheme to defraud AEA Bank

20     Since the computer systems have been disconnected and are stored on pallets at Western Van and Storage, I am requesting the Court's approval to seize any and all computer components and hard drives, as well as related hardware and software, which appear necessary to the operation of the computer systems in question  It will be necessary for me to seize all such items in order to properly search the contents of the computers and storage

AFFIDAVIT/MILLER/WESTERN VAN & STORAGE - 5
(USAO #2003R00678)

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101 3903
(206) 553-7970

devices in a controlled laboratory setting, as more fully explained in my previous <u>Application</u> <u>for Search Warrant</u>, at **Attachment B**.

21.    Although I can make a seizure of all relevant computer systems within ten days, a complete forensics examination of the computer systems cannot be completed within ten days for the reasons stated in paragraph 38 of my previous <u>Application for Search Warrant</u> Therefore, I am requesting that I be permitted to seize the computer systems, within the scope of this Search Warrant, within ten (10) days of the Court's issuance of the warrant.  I am requesting that a search of the computer systems' data, by way of a forensics examination in a controlled laboratory environment, be conducted within a reasonable time thereafter

22    Based on the foregoing, I have probable cause to believe that on the premises of Western Van and Storage, 8521 South 190th Street, in Kent, Washington, and as inventoried and maintained under the Superior Court of King County, Cause No  03-2-17350-9SEA, there are computer systems, with related electronic storage devices, peripheral devices, software, documentation, data security devices, and passwords, which contain evidence of the commission of a criminal offense; and which is contraband, the fruits of crime, or things otherwise criminally possessed, and which is property designed or intended for use which is or has been used as the means of committing a criminal offense, namely, Bank Fraud, in violation of Title 18, United States Code, Section 1344, and the Making of a False Statement in Connection with a Loan Application, in violation of Title 18, United States Code, Section 1014

THEODORE A  MILLER
Special Agent, Federal Bureau of Investigation

SUBSCRIBED AND SWORN to before me this ____6____ day of June 2003, by
THEODORE A. MILLER.

UNITED STATES MAGISTRATE JUDGE

AFFIDAVIT/MILLER/WESTERN VAN & STORAGE - 6
(USAO #2003R00678)

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553 7970

## **ATTACHMENT A – Items to be Seized**

The items to be seized are the following items that constitute evidence, fruits, and instrumentalities of criminal activity involving a scheme to defraud a bank and false statements in support of a loan request in violation of Title 18, United States Code, Sections 1014 and 1344, from at least January 2000 through the present:

1. A laptop computer system, serial number believed to be B2L930B, and all electronic storage devices, along with related peripheral devices, software, documentation, data security devices, and passwords; any and all computer systems, including a laptop computer and desktop computer, previously kept in the office of SHELLEY DAY on the business premises of HULABEE ENTERTAINMENT, INC.

2. The following records, documents, files, or materials, in whatever form, including handmade or mechanical form (such as printed, written, typed, or handwritten); photocopies of other photographic form; e-mails; and electrical, electronic, and magnetic form (such as tapes, cassettes, diskettes, compact discs, CD-ROMs, DVDs, optical discs, Zip cartridges, printer buffers, smart cards, or electronic notebooks, or any other storage medium):

   a) Any and all documents and information relating to the bank accounts or loan accounts in the name of SHELLEY DAY, Ronald Gilbert, and/or HULABEE ENTERTAINMENT INC., to include, but not limited to, the following:
      i. Deposit/withdrawal requests or wire transfer requests;
      ii. Loan documentation and applications

   b) Any and all documents and information relating to the investment and brokerage accounts in the name of SHELLEY DAY, Ronald Gilbert, and/or HULABEE ENTERTAINMENT INC., to include, but not limited to, the following:
      i. Desposit/withdrawal requests or wire transfer requests
      ii Applications

   c) Financial statements for SHELLEY DAY, Ron Gilbert, and/or HULABEE ENTERTAINMENT INC.

d) Contracts, promissory notes, invoices, statements, and correspondence between SHELLEY DAY, Ronald Gilbert, and/or HULABEE ENTERTAINMENT, INC., and/or Vivendi Universal, Disney Interactive, and Graham Dorland.

e) Real estate records pertaining to the residences at 5044 Butterworth Road, in Mercer Island, Washington, and at 9730 North Mercer Way, Mercer Island, Washington, to include the following·

    i) Residential Real Estate Purchase and Sale Agreements, and any addenda or supplemental memoranda to real estate contracts;

    ii) Listing agreements, and documents pertaining to real estate listings;

    iii) Correspondence between SHELLEY DAY and Graham Dorland, or any other persons relating to the purchase and sale of real estate.

f) Any documentation pertaining to the name of "C. Tevelson" and/or the address of 7540 Navigator's Circle, in Carlsbad, California.

3 In order to search for data that is capable of being read by a computer, law enforcement personnel will need to seize and search the following items.

a) Any computer equipment and storage device capable of being used to commit, further or store evidence of the offenses listed above;

b) Any computer equipment used to facilitate the transmission, creation, display, encoding or storage of data, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners;

c) Any magnetic, electronic or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-R, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, and personal digital assistants;

d) Any documentation, operating logs and reference manuals regarding the operation of the computer equipment, storage devices or software.

e) Any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices or data to be searched;

f) Any physical keys, encryption devices, dongles and similar physical items that are necessary to gain access to the computer equipment, storage devices or data; and

g) Any passwords, password files, test keys, encryption codes or other information necessary to access the computer, storage devices or data.

**THE SEIZURE OF COMPUTER SYSTEMS OR COMPUTER COMPONENTS, INCLUDING HARDWARE AND SOFTWARE, IS SPECIFICALLY AUTHORIZED BY THIS SEARCH WARRANT FOR THE PURPOSE OF CONDUCTING OFF-SITE EXAMINATIONS OF THEIR CONTENTS FOR EVIDENCE, INSTRUMENTALITIES, AND/OR FRUITS OF THE AFOREMENTIONED CRIMES.**

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON

In the Matter of the Search of

(Name, address or brief description of person, property, or premises to be searched)

5044 Butterworth Road, Mercer Island, Washington, and
320 2nd Avenue North, Kirkland, Washington.

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

CASE NUMBER  03 - 251 M

I, THEODORE A. MILLER , being duly sworn depose and say

I am a Special Agent of the Federal Bureau of Investigation, and have reason to believe that ( ) on the person of
(X) on the property known as  (name, description and/or location)

_____ENTERED
_____LODGED   _____RECEIVED

MAY - 5 2003

See Attachment A, which is attached hereto and incorporated herein by reference,

in the Western District of Washington, there is now concealed a certain person or property, namely
(describe the person or property to be seized)

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY_____ DEPUTY

*See* Attachment B, which is attached hereto and incorporated herein by reference,

CERTIFIED TRUE COPY
ATTEST: BRUCE RIFKIN
Clerk, U.S. District Court
Western District of Washington

By_____
Deputy Clerk

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)

evidence, fruits, and instrumentalities of Bank Fraud and Making a False Statement in Connection
With a Loan Application,

concerning a violation of Title 18 United States Code, Section(s) 1014 and 1344

The facts to support a finding of Probable Cause are as follows

See Affidavit of Special Agent Theodore A. Miller, which is attached hereto and incorporated herein by
reference

Continued on the attached sheet and made a part hereof

(X) Yes     ( ) No

_____
Signature of Affiant
THEODORE A. MILLER

Sworn to before me, and subscribed in my presence

May 5, 2003_____    at

Date

Seattle, Washington_____

City and State

United States Magistrate Judge Monica J. Benton
Name and Title of Judicial Officer

_____
Signature of Judicial Officer

Attachment B

## ATTACHMENT "A"

## LOCATIONS TO BE SEARCHED

1     5044 Butterworth Road
      Mercer Island, Washington

      More fully described as

      A single-story, red and white-bricked, single-family dwelling, with ceramic-tiled
      roof and stucco sidewalls  This house has a four-car garage.  The numbers "5044"
      appear on the house  There are glass doors at the main entryway and brick walls
      on the south and north sides of the house  This residence is adjacent to 5048
      Butterworth Road to the south, and 5034 Butterworth Road to the north

2     320 2nd Avenue South, Kirkland, Washington

      More fully described as.

      A cream-colored two-story office building, with blue accents and trimming, with
      the main entrance facing South. The numbers "320" appear on the glass door
      leading into the  main entrance  HULABEE ENTERTAINMENT, INC  is the only
      tenant of the office building and has a parking lot with spaces to the south, east,
      and north of the building.  The building is adjacent to the Furniture Polishing and
      Repair store to the west, the Mont Clare apartments to the east, and Kirkland
      Assembly of God Church to the south

## AFFIDAVIT

STATE OF WASHINGTON )
)
COUNTY OF KING )

THEODORE A MILLER, being duly sworn, states as follows

1    I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been employed as such for over four years. I have received extensive training involving the investigations of bank fraud, money laundering, and bank embezzlement at the FBI Academy during new agent's training and during various white collar crime training seminars which I have attended   While employed as a Special Agent for the FBI, I have conducted many criminal investigations pertaining to the violations of these federal laws   Before becoming a Special Agent for the FBI, I was employed as a tax auditor and certified public accountant (CPA) for over six years

### STATUTES UNDER INVESTIGATION

2    Title 18, United States Code, Section 1344 (Bank fraud) provides that   "Whoever knowingly executes, or attempts to execute, a scheme or artifice – (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises, shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

3    Title 18, United States Code, Section 1014 (False loan and credit applications) provides, in relevant part, that. "Whoever knowingly makes any false statement or report, or willfully undervalues any land, property or security, for the purpose of influencing in any way the action of .  any institution the accounts of which are insured by the Federal Deposit Insurance Corporation   . upon any application, ... commitment, or loan, or any change or extension of any of the same, by renewal ... shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both ... ."

UNITED STATES ATTORNEY
601 Union Street, Suite 5100
Seattle, Washington 98101-3903
(206) 553-7970

## LOCATIONS TO BE SEARCHED

4    I submit this Affidavit in support of an Application for Search Warrants to search the private residence of SHELLEY DAY located at 5044 Butterworth Road, Mercer Island, Washington, and the business premises of HULABEE ENTERTAINMENT, INC , located at 320 2nd Avenue South, in Kirkland, Washington, both further described as follows

a       5044 Butterworth Road, Mercer Island, Washington.

A single-story, red and white-bricked, single-family dwelling, with ceramic-tiled roof and stucco sidewalls  This house has a four-car garage  The numbers "5044" appear on the house.  There are glass doors at the main entryway and brick walls on the south and north sides of the house  This residence is adjacent to 5048 Butterworth Road to the south, and 5034 Butterworth Road to the north

b       320 2nd Avenue South, Kirkland, Washington.

A cream-colored two-story office building, with blue accents and trimming, with the main entrance facing South.  The numbers "320" appear on the glass door leading into the main entrance  HULABEE ENTERTAINMENT, INC  is the only tenant of the office building and has a parking lot with spaces to the south, east, and north of the building. The building is adjacent to the Furniture Polishing and Repair store to the west, the Mont Clare apartments to the east, and Kirkland Assembly of God Church to the south.

## ITEMS TO BE SEARCHED AND SEIZED

5    As described in this Affidavit, I have probable cause to believe there is located at the above-described locations certain computer hardware\software and documentary evidence, along with other items, as more fully described in **ATTACHMENT B**, which is attached to this Affidavit and incorporated herein by reference.  I have probable cause to believe that these items constitute evidence of the commission of a criminal offense; or contraband, the fruits of crime, or things otherwise criminally possessed; or property designed or intended for use which is or has been used as the means of committing a criminal offense, namely, Bank Fraud, in violation of Title 18, United States Code, Section 1344, and the Making of a False Statement in Connection with a Loan Application, in violation of Title 18, United States Code, Section 1014

MILLER AFFIDAVIT/SHELLEY DAY - 2
(USAO #2003R00678)

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

1

## INVESTIGATION FINDINGS

2      6     By way of summary, my investigation has led me to believe that SHELLEY

3 DAY, and possibly others, has/have been involved in the commission of a bank fraud against

4 Asia Europe Americas Bank (AEA Bank), a federally-insured bank located in Seattle,

5 Washington I have reason to believe that, beginning at an exact time unknown, but beginning

6 as early as March 2002, and continuing through the present, within the Western District of

7 Washington, SHELLEY DAY knowingly and willfully devised and executed a scheme and

8 artifice to defraud AEA Bank, a financial institution as defined by Title 18, United States Code,

9 Section 20, and to obtain moneys, funds, and credits under the custody and control of the Bank

10 by false and fraudulent pretenses, representations and promises, as further described below

11      7     I have determined that this scheme involved DAY'S application for, and receipt

12 of, two loans (including renewals), totaling approximately $1,490,500.00, from AEA Bank

13 My investigation had led me to believe that DAY willfully overvalued her property and

14 security and she submitted fraudulent documents, containing forged signatures, to AEA Bank

15 in support of the loans, and that evidence of this scheme exists in DAY's home and on the

16 business premises of HULABEE ENTERTAINMENT, INC

17      8     HULABEE ENTERTAINMENT, INC. is an interactive digital media company,

18 headquartered in Kirkland, Washington, which provides entertainment to children and families

19 worldwide. The company designs products for service on Windows, Macintosh, and the

20 Internet. I believe that SHELLEY DAY and her business partner, Ron Gilbert, established

21 HULABEE ENTERTAINMENT, INC. [hereinafter "HULABEE"], sometime in July 2000. I

22 also believe that DAY and/or Gilbert registered HULABEE with the Washington Secretary of

23 State by at least August 2001 HULABEE is a privately-held company owned by SHELLEY

24 DAY and Ron Gilbert, with each of them owning a fifty percent (50%) share of the stock.

25 Records filed with the Washington Secretary of State list SHELLEY DAY as the Registered

26 Agent for HULABEE at 320 2nd Avenue South, in Kirkland, Washington DAY is named as the

27 Chief Executive Officer of HULABEE

28

MILLER AFFIDAVIT/SHELLEY DAY - 3
(USAO #2003R00678)

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

7.     This matter first came to my attention during April of 2003, when representatives of AEA Bank contacted the Federal Bureau of Investigation and the United States Attorney's Office to report the alleged fraud to federal authorities.

8     I have met with representatives of AEA Bank and I have reviewed documents from the bank, and elsewhere   Also, I have spoken with witnesses who have knowledge of relevant facts, as described below, and I have learned the following.

9.     On April 21, 2003, I spoke with Cathy Bihler, a loan officer and Vice President of AEA Bank, who approved DAY's applications for several loans

10     Sometime in March 2002, DAY applied for a loan from AEA Bank   On or about April 8, 2002, the Bank granted the loan to DAY, account number 1009702000 (hereinafter "the First Loan"), in the amount of $880,500 00.  The term of the loan was twelve months, which included interest-only payments for the first few months, followed by principal/interest payments for the following months, and a balloon payment due in March 2003

11     The Bank used as security and collateral for the loan a Second Deed of Trust on DAY's residence at 5044 Butterworth Road, Mercer Island, Washington, as well as an assignment of funds from DAY's interest in the sale of her shares of stock in HULABEE, for approximately $2 5 million   DAY advised bank officials that she would be using the loan proceeds primarily for the following purposes.  to make a down payment of $550,000 toward her purchase of a house from Graham Dorland at 9730 North Mercer Way, in Mercer Island, Washington [hereinafter "the Dorland House"],  to pay a judgment lien on DAY's residence at 5044 Butterworth Road ($210,000); and to pay DAY's real estate and income taxes ($52,000), the bank's closing costs ($18,500), and miscellaneous other items, such as moving expenses, attorney's fees, etc.  DAY actually used the funds to pay off a judgement lien in the amount of $685,000, to make a partial down payment on the Dorland House in the amount of $175,372, and to pay miscellaneous other costs.

12.     On or about May 7, 2002, upon DAY's application and request, AEA Bank extended DAY a second loan, account number 1009702016, in the amount of $230,000 00 [hereinafter "the Second Loan].  This was a short-term loan (thirty days)   DAY's stated

MILLER AFFIDAVIT/SHELLEY DAY - 4
(USAO #2003R00678)

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

purpose for the Second Loan was to make additional payments to Graham Dorland, in the amount of $235,811 23, toward the purchase of the Dorland House. DAY represented to the Bank that she would repay the loan with proceeds derived through the sale of her company, HULABEE. On June 25, 2002, DAY reduced the principal of the loan to $215,000, and extended its due date by another 108 days  On July 31, 2002, and September 4, 2002, DAY made two payments of $15,000 and reduced the principal to $185,000. Then, on October 10, 2002, the loan amount was increased by $425,000 00, raising the total to $610,000.00, and the loan term was extended an additional 160 days. On or about October 7, 2003, DAY actually transferred $270,000 to an investment account in her name at Credit Suisse Bank/First Boston, account 219-343 803, in San Francisco, California, and she paid the remainder of the proceeds to Graham Dorland

13.    DAY made some payments on the Loans, but eventually defaulted. As of April 21, 2003, the outstanding principal of the First Loan ($878,900.54) and the Second Loan ($600,000 00), totaled $1,478,900 54

14.    One of the Loans was made on the representation that DAY was selling her current residence at 5044 Butterworth, Mercer Island, Washington. However, bank representatives later learned that DAY has never listed her home for sale

15.    Both Loans were extended by AEA Bank based on DAY's representations that she would be selling HULABEE ENTERTAINMENT INC. to Disney Interactive, a subsidiary of Walt Disney Corporation. However, AEA Bank later learned that DAY had misrepresented this transaction and that Disney Interactive never intended to purchase HULABEE and never entered into an agreement to purchase HULABEE

16.    The fraudulent nature of the loan applications is evidenced by the manner in which DAY willfully overvalued her property and security in support of the loans. To that end, DAY supplied to the Bank several signed agreements, or contracts, as evidence of business deals she had successfully negotiated with third parties, including Disney Interactive  These contracts led bank officials to believe that DAY would soon be deriving substantial sums of money from these third parties, thus resulting in a significant cash flow from which she could

MILLER AFFIDAVIT/SHELLEY DAY - 5
(USAO #2003R00678)

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

1  service her loans.  As shown below, however, these third-party contracts never existed and

2  DAY was not actually expecting to receive moneys from third parties as she had represented

3      17    Specifically, in support of her loan requests DAY fraudulently represented to

4  bank officials that her corporation, HULABEE ENTERTAINMENT, had signed agreements

5  [collectively, the "Disney Contract"] with Disney Interactive, Inc , a subsidiary of the Walt

6  Disney Corporation  DAY also represented that HULABEE owed her, in her individual

7  capacity, approximately $1 2 million, as evidenced by promissory notes from HULABEE to

8  her [hereinafter "the HULABEE promissory notes"]

9      18    DAY presented a copy of the Disney Contract to bank officials, which included

10  the initial contract and various amendments to the contract  The Disney Contract indicated that

11  Disney Interactive would buy HULABEE stock for $5 million, which meant that DAY and her

12  business partner, Ron Gilbert, would each receive $2 5 million in salary, bonuses, and back

13  pay.  The Disney Contract also indicated that DAY and Gilbert would stay on with the

14  company and continue to develop products  To that end, the Disney Contract indicated that

15  Disney Interactive would pay HULABEE to develop video games (which, therefore, would

16  give HULABEE the necessary cash flow to make payments to DAY on the HULABEE

17  promissory notes).  From all the paperwork presented, Bank officials were led to believe that

18  the Disney Contract would have given DAY the necessary influx of cash to service the Loans

19      19.    When approving and issuing the two loans to DAY, AEA Bank personnel relied

20  heavily on the information and documentation supplied by DAY regarding the acquisition of

21  HULABEE by Disney Interactive  To validate the purported acquisition, DAY provided the

22  loan officer with contracts signed by Disney executives and DAY, specifying the terms of the

23  acquisition  This contract was signed by Jan E. Smith, the then-president of Disney Interactive.

24  AEA Bank's legal counsel reviewed all of the  agreements, amendments, and drafts supplied

25  by DAY.  The bank's legal counsel advised the loan officer that the documents were in good

26  form and appeared to be authentic

27

28

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

20      Based on what appeared to the bank as credible sources of repayment and the ability of DAY to service payments until the time that she sold her residence and her shares of stock in HULABEE, AEA Bank agreed to make the Loans

21      DAY made some interest-only payments for a few months, and then stopped making payments   When questioned by the bank as to her missed payments, DAY engaged in what appeared to the bank personnel as stalling tactics. For example, DAY advised AEA Bank that she had to renegotiate her Disney Contract because another company, known as Vivendi Universal Publishing [hereinafter "Vivendi"], had acquired Disney Interactive, thereby rendering her Disney Contract as no longer valid.

22.     Accordingly, DAY advised AEA Bank that her Disney Contract would be terminated and she would enter into a new contract with Vivendi [hereinafter "the Vivendi Contract"]. Consequently, DAY produced to the bank, through her lawyer, a copy of the purported Vivendi Contract. DAY also produced to the bank a copy of a letter, dated March 3, 2003, which she supposedly sent to a Mr C  Tevelson of the Business Affairs Group for Vivendi Universal Publishing at 7541 Navigators Circle, in Carlsbad, California 92009-5405. The letter purportedly advised Vivendi officials to send the sale proceeds, from the purchase of HULABEE, directly  to AEA Bank to cover DAY's past-due payments on the loans

23      Based on the information contained in the Vivendi Contract, the bank's representatives and DAY's attorney then negotiated additional loan documents, including a new payment plan for the Loans, which was signed by DAY and her partner, Ron Gilbert.

24      In early 2003, DAY went into default. As DAY became less available to meetings and discussions with concerned bank officials, the bank began conducting independent enquiries with Disney Interactive and Vivendi   Bank representatives were astonished to learn that Disney Interactive had never entered into any agreement with DAY for the purchase and acquisition of DAY's company, HULABEE

25      Representatives of AEA Bank sent all contracts and paperwork, provided previously by DAY, to officials from Disney Interactive for their review   Representatives of Disney Interactive advised that, although the names appearing on the contracts were names of

actual officials working in the company, none of the named officials had signed the documents in question and, in fact, all their signatures were forgeries.

26      The loan officer from AEA Bank contacted the Accounts Payable department of Vivendi to inquire if it had a record of payments being made by Vivendi to HULABEE or DAY  DAY previously had told AEA Bank that Vivendi had made the initial payment required under the Vivendi Contract, but that HULABEE had inadvertently applied the funds to obligations other than AEA Bank – in contravention of a signed agreement between AEA Bank and HULABEE  Vivendi advised the loan officer that it had no record of any dealings with or payments to HULABEE or Shelley DAY.

27.      Further, bank representatives enquired into Vivendi's address as provided by DAY, and learned that the given address was located in a residential neighborhood in Carlsbad, California  They also learned that the address is a house owned by a "Mr. C  Tevelson." Actual representatives of Vivendi confirmed for bank personnel that Vivendi does not have a person by the name of "C  Tevelson" in its phone directory, and does not have any offices of any nature in Carlsbad, California

28.      On April 23, 2003, I spoke with Graham Hopper, the current President of Disney Interactive, and he voluntarily provided the following information·  Hopper had reviewed a copy of the termination agreement of the acquisition of HULABEE by Disney Interactive and stated he did not sign the agreement and that the signature on the copy he examined was a forgery.  In addition, Hopper was not aware of any agreements or proposals for Disney Interactive to acquire HULABEE, nor was he aware of any agreements or proposals for Vivendi Universal Publishing to acquire or purchase Disney Interactive

29.      On May 5, 2003, I spoke with Jan E. Smith, the previous President of Disney Interactive, and she voluntarily provided the following information. Smith had reviewed copies of the acquisition agreement and amendments between Disney Interactive and HULABEE. Smith stated that she did not sign any of the agreements or amendments and the signatures on these copies were forgeries.  In addition, Smith was not aware of any agreements or proposals

MILLER AFFIDAVIT/SHELLEY DAY - 8
(USAO #2003R00678)

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

for Disney Interactive to acquire HULABEE, nor was she aware of any agreement or proposal for Vivendi Universal Publishing to acquire Disney Interactive.

30    I have reviewed documents provided by AEA Bank and have determined that on or about October 8, 2002, DAY performed a $270,000 00 wire-transfer of funds from her checking account at AEA Bank, account number 1001020054, to her investment account at Credit Suisse Bank/First Boston in San Francisco, account number 219-343 803  This was the same day on which AEA Bank had deposited $425,000 into her account in relation to an increase in her Second Loan, account number 1009702016.  This $270,000 was originally issued in the form of an AEA Bank check for $270,000, payable to Graham and Virginia Dorland, but DAY had returned this check and deposited the proceeds into her AEA Bank checking account prior to the above-mentioned wire transfer.

31.    Through my training and experience as a Special Agent with the FBI, I have learned that individuals involved in bank fraud typically use their residence and business or employment to maintain, conceal, and store documents, instruments, receipts, fruits and other items used, obtained, and produced in the commission of this crime

32    From my review of the paperwork, I have seen that DAY conducted several written communications with bank officials from her business premises at HULABEE  For instance, almost all of the letters sent by DAY to the bank were sent on HULABEE letterhead, which reflected the following address: 320 2nd Avenue South, Kirkland, Washington 98033

33.    DAY also conducted her banking relationship from her home, as well as from her business. DAY sent some of the correspondence to the bank from her personal residence  DAY had included the home as partial security on the loans.  On occasion, bank officials sometimes went to her home  Bank personnel also sent correspondence to DAY at her home

34.    In furtherance of her scheme to defraud, DAY frequently used the e-mails. She sent numerous communications from her business premises to bank personnel at AEA Bank. Bank officials sometimes responded to DAY by e-mail, as well.  Yet other times, DAY provided to the loan officer copies of e-mails sent between herself and officials of Disney Interactive, purportedly in connection with the Disney Contract  These e-mails tell me that

MILLER AFFIDAVIT/SHELLEY DAY - 9
(USAO #2003R00678)

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

DAY had the capability to use her computer in such a manner to make it appear that she was sending e-mail communications to and from Disney officials regarding the purported sale of her company. DAY supplied hard copies of these e-mail communications to bank officials, and most likely did so in order to give an air of legitimacy to her claim that Disney officials had agreed to purchase her company and, thus, pay her millions of dollars on the contract.

35. Other times, DAY faxed correspondence, contracts, and agreements to bank officials, as evidenced by her office facsimile number ((425) 739-2789) printed on each page as it was transmitted to AEA Bank.

36. Furthermore, the purported Disney Contract, written amendments, and supporting documentation, all appear to have been prepared on a computer with a wordprocessing system. All the relevant papers have what appears to be a digital or electronic file number on the bottom left corner of each page, which signifies to me that this document may be found on DAY's computer system under that file number.

37. In this case, the warrant application requests permission to search and seize files, and e-mails, including those that may be stored on a computer. This affidavit also requests permission to seize the computer hardware that may contain any such files if it becomes necessary for reasons of practicality to remove the hardware and conduct a search off-site.

38. Based upon my training and experience, consultations with experts in computer searches, and my communications with other law enforcement agents who have been involved in the search of computers and retrieval of data from computer systems, I know that searching and seizing information from computers often requires agents to seize all electronic storage devices (along with related peripherals, software, documentation, data security devices, and passwords) so that a qualified computer expert can accurately retrieve the system's data in a laboratory or other controlled environment. This is true because of the following.

a. <u>Volume of evidence</u>: Computer storage devices (such as hard disks, diskettes, tapes, laser disks, CD-ROMs, DVDs, and Bernoulli drives) can store the equivalent of hundreds of thousands of pages of information. Additionally, a suspect may try to conceal criminal evidence by storing it in random order with deceptive file names or deceptive file

MILLER AFFIDAVIT/SHELLEY DAY - 10
(USAO #2003R00678)

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

extensions   This may require searching authorities to examine all the stored data to determine which particular files are evidence or instrumentalities of a crime.  This sorting process can take weeks to months, depending on the volume of data stored   It would also be impractical to attempt this type of data search on site;

     b  <u>Technical requirements</u>   Searching computer systems for criminal evidence is a highly technical process, requiring expert skill and a properly controlled environment   The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert is qualified to analyze the system and its data   In any event, data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files.  Since computer evidence is extremely vulnerable to inadvertent or intentional modification or destruction (both from external sources or from destructive codes embedded in the system, such as a "booby trap"), a controlled environment is essential to its complete and accurate analysis

     c  <u>Search techniques</u>   The analysis of electronically stored data may entail any or all of several different techniques.  Such techniques may include, but are not limited to, surveying various file "directories" and the individual files they contain (which is analogous to looking at the outside of a file cabinet for the pertinent files in order to locate the evidence and instrumentalities authorized for seizure by the warrant); "opening" or reading the first few "pages" of such files in order to determine their precise contents, "scanning" storage areas to discover and possibly recover recently deleted data, scanning storage areas for deliberately hidden files; or performing electronic "keyword" searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation

   39.  Through my training and experience as a Special Agent with the FBI, I have learned that individuals involved in bank fraud typically transfer their money from one account to another, so as not to leave a direct paper trail   I also know that persons who have utilized a scheme to obtain money from others or from a bank will often spend their moneys to purchase

MILLER AFFIDAVIT/SHELLEY DAY - 11
(USAO #2003R00678)

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

assets, real and personal, and investments, and to pay their living expenses.  Whatever funds they do not spend are sometimes kept in safe keeping, such as a safety deposit box  I believe it is necessary to also search for any records relating to any and all bank accounts, investment or brokerage accounts, in order to attempt to ascertain the disposition of moneys which DAY unlawfully obtained from the bank

40.    During the week of April 28, 2003, I drove by DAY's residence, and it appeared to me that she still resides there.  I also visited the premises of HULABEE, and it appeared to me that minimal business operations were ongoing

41    Based on the foregoing, I believe that there is probable cause to believe that on the premises of DAY's residence, at 5044 Butterworth Road, Mercer Island, Washington, and the business premises of HULABEE ENTERTAINMENT, INC , located at 320 2nd Avenue South, in Kirkland, Washington, there exists computer hardware\software and documentary evidence, along with other items, as more fully described in **ATTACHMENT B**, which is evidence of the commission of a criminal offense, or contraband, the fruits of crime, or things otherwise criminally possessed, or property designed or intended for use which is or has been used as the means of committing a criminal offense, namely, Bank Fraud, in violation of Title 18, United States Code, Section 1344, and the Making of a False Statement in Connection with a Loan Application, in violation of Title 18, United States Code, Section 1014

THEODORE A. MILLER

SUBSCRIBED AND SWORN to before me this _____ day of May 2003, by THEODORE A  MILLER

UNITED STATES MAGISTRATE JUDGE

MILLER AFFIDAVIT/SHELLEY DAY - 12
(USAO #2003R00678)

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

## ATTACHMENT B – Items to be Seized

The items to be seized are the following items that constitute evidence, fruits, and instrumentalities of criminal activity consisting of a scheme to defraud a bank and to obtain moneys and credits from a bank by making false representations and statements, and by submitting a false statement in support of a loan, in violation of Title 18, United States Code, Sections 1014 and 1344, for the time period January 2000 through the present:

1.     The following records, documents, files, or materials, in whatever form, including handmade or mechanical form (such as printed, written, handwritten, or typed), photocopies of other photographic form, and electrical, electronic, and magnetic form (such as tapes, cassettes, hard disks, floppy disks, diskettes, compact discs, CD-ROMs, DVDs, optical discs, Zip cartridges , printer buffers, smart cards, or electronic notebooks, or any other storage medium).

    a)     Any and all documents and information related to the bank accounts or loan accounts in the name of SHELLEY DAY, Ronald Gilbert, and/or HULABEE ENTERTAINMENT INC., to include, but not limited to, the following:
- i.     Monthly account statements,
- ii.     Signature cards;
- iii     Cancelled checks;
- iv.     Account applications;
- v.     Deposit slips and deposit receipts;
- vi.     Wire transfer receipts and wire transfer requests;
- vii.     Safety Deposit Box information, and keys;
- viii.     Loan documentation and applications.

    b)     Any and all documents and information related to the investment and brokerage accounts in the name of SHELLEY DAY, Ronald Gilbert, and/or HULABEE ENTERTAINMENT INC , to include, but not limited to, the following·
- i     Statements of account;
- ii.     Signature cards;
- iii.     Cancelled checks;
- iv.     Account applications;
- v.     Deposit slips and deposit receipts;

      vi.    Wire transfer receipts and wire transfer requests

c)    Any and all federal and state tax returns, for the time period January 2000 through the present, including, income tax returns, sales returns, and Business and Occupation returns, and withholding returns.

d)    Financial statements for SHELLEY DAY, Ron Gilbert, and/or HULABEE ENTERTAINMENT INC.

e)    Contracts, promissory notes, invoices, statements, and correspondence between SHELLEY DAY, Ronald Gilbert, and/or HULABEE ENTERTAINMENT, INC , and Vivendi International, Disney Interactive, and Graham Dorland.

f)    Real estate records pertaining to the residences at 5044 Butterworth Road, in Mercer Island, Washington, and at 9730 North Mercer Way, Mercer Island, Washington, to include, but not limited to, the following:

    i)    Residential Real Estate Purchase and Sale Agreements, and any addenda or supplemental memoranda to real estate contracts;
    ii)    Property tax statements;
    iii)    Property tax liens;
    iv)    Payments made by and between SHELLEY DAY and Graham Dorland;
    v)    Listing agreements, and documents pertaining to real estate listings;
    vi)    Correspondence between SHELLEY DAY and Graham Dorland, or any other persons relating to the purchase and sale of real estate.

g)    Any documentation pertaining to the name of "C. Tevelson" and/or the address of 7540 Navigator's Circle, in Carlsbad, California.

2    In order to search for data that is capable of being read or interpreted by a computer, law enforcement personnel will need to seize and search the following items.

    a) Any computer equipment and storage device capable of being used to commit, further or store evidence of the offenses listed above;

    b) Any computer equipment used to facilitate the transmission, creation, display, encoding or storage of data, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners;

    c) Any magnetic, electronic or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-R, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, and personal digital assistants,

    d) Any documentation, operating logs and reference manuals regarding the operation of the computer equipment, storage devices or software.

    e) Any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices or data to be searched;

    f) Any physical keys, encryption devices, dongles and similar physical items that are necessary to gain access to the computer equipment, storage devices or data; and

    g) Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data.

**THE SEIZURE OF COMPUTER SYSTEMS OR COMPUTER SYSTEM COMPONENTS, INCLUDING HARDWARE AND SOFTWARE, IS SPECIFICALLY AUTHORIZED BY THIS SEARCH WARRANT FOR THE PURPOSE OF CONDUCTING OFF-SITE EXAMINATIONS OF THEIR CONTENTS FOR EVIDENCE, INSTRUMENTALITIES, OR FRUITS OF THE AFOREMENTIONED CRIMES.**